UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>    vs.<br><br>MAURICE WILFORD,<br><br>             Defendant. | 5:17-CR-50133-JLV<br><br>REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION TO SUPPRESS (DOC. 80) |

Pending is Defendant's Motion to Suppress (Doc. 80).  A hearing was held on Wednesday, August 28, 2019.  Defendant was personally present and represented by his attorney of record, John Murphy.  The Government was represented by the Assistant United States Attorney Eric Kelderman.  One witness testified at the hearing, and two exhibits were received into evidence. Supplemental briefing concluded on September 24, 2019.  Based on a careful consideration of all the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

## RECOMMENDATION

It is respectfully recommended that Defendant's Motion to Suppress be denied.

## JURISDICTION

Defendant is charged in an Indictment with being a Prohibited Person in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1), (3), and (9) and

Possession of a Stolen Firearm in violation of 18 U.S.C. §§ 922(j) and 924(a)(2). The pending Motion was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Chief Judge Jeffrey L. Viken's Standing Order dated April 1, 2018.

## FACTUAL BACKGROUND

Beginning in February of 2017 members of the Unified Narcotics Enforcement Team ("UNET") received information that there were drugs being sold out of 210 E. Monroe St. in Rapid City, SD. (Ex. 1 at p. 5). At that time, Rapid City Police Department Detective ("Det.") Chad Sayles worked for UNET and investigated Defendant. Id. at p. 3. Det. Sayles has over sixteen years of experience in law enforcement and has worked in patrol, street crimes, and UNET, among other assignments. Id. Det. Sayles was author of the affidavit submitted with the proposed search warrant. Id. The affidavit stated that tipsters noticed large amounts of stop and go traffic occurring at all hours of the day and involving random vehicles. Id. Some of the license plates identified from tipsters returned as registered to subjects with drug history in Rapid City Police/Pennington County Sheriff's Office records. Id. One tipster advised having first hand knowledge of drug use and sales in the house. Id. One tip specifically advised that methamphetamine was being used and sold in front of multiple children living in the home. Id. The Rapid City Police Department ("RCPD") report in this matter advises that approximately twelve children lived at the home. Id.

A trash pull was conducted at the residence in June of 2017 which revealed "plastic baggies consistent with packaging for illegal drugs, straws cut with residue consistent with illegal drugs, a box for a digital scale, a round of ammunition, and "parts for a rail for firearms commonly used to mount lights and other accessories." Id. at p. 6. The drug related items were submitted for testing with the RCPD Forensic Lab, which tested positive for THC, hydrocodone, and methamphetamine. Id. Source of Information ("SOI") #1 disclosed that Denelle Dunn lived at the address and received four to eight ounces of methamphetamine a week to sell. Id. SOI #2 disclosed that Defendant also lived at the residence and was dating Denelle Dunn. Id. The same informant stated that Defendant and Denelle Dunn would carry weapons and that Defendant "had bragged about putting a gun in the mouths of subjects, intimidating them." Id. SOI #3 disclosed purchasing methamphetamine from Denelle Dunn in "[twenty] sack quantities" at the Rapid City address. The affidavit also stated Defendant's criminal history as including convictions for: aggravated assault, domestic assault, and concealed weapon charges. Id. at p. 7.

Det. Sayles prepared a search warrant based on the tips from the informants as well as law enforcement's observations of the residence and the trash pull that was conducted. Id. at p. 8-10. The search warrant caption included Defendant's name as well as Denelle Dunn, Alechia Ross, Martie WarBonnett, and Kayla WarBonnett. Id. at p. 8. The search warrant requested to search: the house located at 210 E. Monroe St., Rapid City, SD 57701; a

silver 2003 Buick LeSabre, registered to Faith Zwetzig; a gray 1997 Honda

Civic, registered to Martie WarBonnett; the persons of: Defendant, Denelle

Dunn, Alechia Ross, Kayla WarBonnett, and Martie WarBonnett; and any

persons and/or vehicles present or arriving at the residence between the

execution of the search warrant and the termination of the search warrant that

had a social nexus to the defendant(s) relating to the warrant and events. Id.

at p. 8-9. Among the specific items listed in the warrant to be searched was "a

urine and/or blood sample from Maurice Wilford." Id. at p. 9. At

approximately 11:15 a.m. on August 15, 2017, South Dakota Seventh Circuit

Judge Jeff W. Davis signed and dated the affidavit and issued the search

warrant. Id. at p. 7, 10.

In conducting the search warrant, Defendant was identified after leaving

the residence at 210 E. Monroe St. and pulled over while driving the Buick

LeSabre subject to the search warrant. (Doc. 80 at p. 4); (Ex. 1 at p. 2).

Following a law enforcement pursuit, Defendant was arrested and five firearms

were located in the Buick LeSabre. (Doc. 80 at p. 5). Defendant then had a

blood sample taken which tested positive for amphetamine and

methamphetamine. Id. The next morning, after waiving his Miranda rights,

Defendant provided a statement to law enforcement purportedly admitting to

knowing guns were in the vehicle, that he was a prohibited person, and that

one of the guns may have been stolen from the Pine Ridge Indian Reservation.

Id.

4

## DISCUSSION

Defendant filed this Motion to Suppress the following pieces of evidence: (1) the results of all blood and urine obtained from Defendant pursuant to the search warrant; (2) all statements made by Defendant during the execution of the search warrant and after he was in custody and arrested; and (3) all items found on Defendant's person or in the car he was driving at the time the search warrant was executed upon him. Id. at p. 1. Defendant argues the search warrant was not supported by probable cause because all information relating to Defendant was derived from SOI #2 to which he claims there was inadequate information to assess the veracity and credibility of SOI #2. Id. at p. 6. Defendant concedes that if this court finds the search warrant valid, the above-mentioned pieces of evidence would be admissible. (Doc. 101 at p. 15-16). Defendant further concedes the statement given was valid under Miranda, and therefore, does not contest the voluntariness of the statement, but rather asserts if probable cause was lacking for the search warrant, the subsequent statement given to law enforcement was fruit of the poisonous tree and should be suppressed. Id. The government responds that the warrant was supported by probable cause based on information obtained from confidential informants and corroborated through UNET surveillance regarding the house and its occupants. (Doc. 91 at p. 4). The government further responds that even if probable cause was lacking, law enforcement executed the search warrant in good faith, and therefore suppression of evidence pertinent to the search warrant is not appropriate. Id. at p. 10-14.

The issues as it pertains to this Motion to Suppress can be summarized as follows: (1) Whether probable cause existed to support the search warrant; and (2) If probable cause did not exist, whether the good faith exception applies.

## I.   Probable Cause Supported the Search Warrant

A search warrant must be supported by probable cause.  See, e.g., United States v. Williams, 477 F.3d 554, 557 (8th Cir. 2007).  "If an affidavit in support of a search warrant sets forth sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place, probable cause to issue the warrant has been established."  United States v. Grant, 490 F.3d 627, 631 (8th Cir. 2007) (internal quotations omitted).  See also Illinois v. Gates, 462 U.S. 213, 238 (1983).  Whether a search warrant is supported by probable cause is to be determined by considering the totality of the circumstances.  Grant, 490 F.3d at 631.  The issuing judge's resolution of the issue of probable cause should be paid "great deference by reviewing courts."  Gates, 462 U.S. at 236 (internal quotations omitted).  Reviewing courts examine the sufficiency of an affidavit in support of a search warrant using "common sense" and not using a "hypertechnical" approach.  United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (internal quotations omitted).

Defendant's contention that probable cause did not support the search warrant can best be broken into three issues: (A) Whether SOI #2, the SOI which principally implicated Defendant in the affidavit, was reliable; (B)

6

Whether the search warrant needed to state a specific location or proximity

from the residence that Defendant's person and the vehicle could be searched;

and (C) Whether law enforcement improperly effectuated the search warrant as

an arrest warrant.  (Doc. 80); (Doc. 93).

### A.    Sources of Information were Reliable

Defendant argues that the "only information in the affidavit regarding

Mr. Wilford is from a single, unidentified [SOI]."  (Doc. 80 at p. 3).  Further, he

argues the affidavit in support of the search warrant provided inadequate

information for Judge Davis to independently assess the veracity and

creditability of SOI #2.  Id. at p. 6.  Defendant alleges, in the alternative, that

regardless of SOI #2's reliability, the information provided from SOI #2 had

"nothing to do with the stated purpose of the warrant: to investigate drug

distribution."  Id. at p. 7.  Finally, Defendant argues that the only other

information provided to Judge Davis about Defendant in the affidavit was that

he had a criminal record for non-drug offenses.  Id.

Law enforcement officers must present sufficient information to the judge

so that the judge can make an informed and independent determination of

probable cause.  Franks v. Delaware, 438 U.S. 154, 165 (1978).  When search

warrant affidavits are based upon information supplied by informants, the key

question is whether such information is reliable.  United States v. Williams, 10

F.3d 590, 593 (8th Cir. 1993).  Where a source's information is corroborated,

even in part, by police or by other sources of information, the court may

conclude the informant is reliable.  United States v. Tyler, 238 F.3d 1036, 1039

(8th Cir. 2001). See also Illinois, 462 U.S. at 244–45 (internal citation omitted) ("It is enough, for purposes of assessing probable cause, that 'corroboration through other sources of information reduced the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the hearsay.'"); Williams, 10 F.3d at 593 (internal citations omitted) ("If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable."). "When an informant's information is at least partly corroborated, attacks upon credibility and reliability are not crucial to the finding of probable cause." United States v. Caswell, 436 F.3d 894, 898 (8th Cir. 2006) (internal quotations and alterations omitted).

The Supreme Court has recognized "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." Roviaro v. United States, 353 U.S. 53, 59 (1957). The Court explained the privilege exists to protect "the public interest in effective law enforcement." Id. Citizens are more likely to report crimes to law-enforcement officials if they are able to remain anonymous. Id. On the other hand, the privilege is not absolute. Id. at 60. If disclosure of an informant's identity "is relevant and helpful to the defense of an accused" or "essential to a fair determination of a cause," disclosure is necessary. Id. at 60–61. The court must weigh these competing

interests against each other.  United States v. Harrington, 951 F.2d 876, 877

(8th Cir. 1991) (citing Roviaro, 353 U.S. at 59)).

Here, the affidavit established that various SOIs corroborated each

others' disclosures when reporting that Denelle Dunn was distributing

methamphetamine from the residence.  See (Ex. 1 at p. 6) (stating: SOI #1

provided information that Denelle Dunn was living at the residence and

receiving four to eight ounces of methamphetamine a week to sell; SOI #2

advised that Denelle Dunn received multiple ounces of methamphetamine each

week to sell to other dealers; and SOI #3 disclosed that he/she buys

methamphetamine three to four times a week from Denelle Dunn in twenty

sack quantitates).  Furthermore, law enforcement independently corroborated

drug activity by conducting a trash pull at the residence which revealed various

drug paraphernalia.  Id.  SOI #2 disclosed that Defendant was also living at the

residence and was dating Denelle Dunn.  Id.  Surveillance conducted by UNET

verified the occupants of the residence.  (Doc. 91 at p. 4).

That same informant disclosed that Defendant was threatening

individuals by putting a gun in the mouth of subjects.  Id.  A check of

Defendant's criminal history revealed concealed weapon charges, among

others.  (Ex. 1 at p. 7).  The trash pull law enforcement conducted also revealed

a round of ammunition and "parts for a rail for firearms, commonly used to

mount lights and other accessories."  Id. at p. 6.  Therefore, because the

information pertaining to the Defendant was at least partly corroborated, the

court concludes the unidentified sources of information were reliable.  See

Tyler, 238 F.3d at 1039; Williams, 10 F.3d at 593.

Defendant argues the information provided from SOI #2 was unrelated to

the investigation of drug distribution.  (Doc. 80 at p. 7).  However, the

information provided by SOI #2 stated that Defendant was romantically

involved with Denelle Dunn, Defendant was living with Denelle Dunn in the

residence in which drug activity had been confirmed by the trash pull, Denelle

Dunn was receiving and selling multiple ounces of methamphetamine each

week, and Defendant was threatening subjects with a gun.  (Ex. 1 at p. 6).

Furthermore, the affidavit stated SOI #2 disclosed that Danny Menard was a

"large buyer" from Denelle Dunn, and when Danny Menard was subsequently

located and arrested, a search of his person confirmed methamphetamine,

baggies, and cash.  Id.  A search of Danny Menard's hotel room further

discovered approximately four ounces of methamphetamine.  Id.  The

information provided by SOI #2 was directly related to the purpose of the

search warrant, i.e. to investigate drug distribution.  The information in the

affidavit was reliable and sufficiently corroborated and the judge's probable

cause determination was proper.  Tyler, 238 F.3d at 1039; Caswell, 436 F.3d at

898; Williams, 10 F.3d at 593.

### B.    Search Warrant did not Need to State a Specific Location for Defendant's Person and Vehicle to be Searched

Defendant argues that "whether the affidavit established probable cause

to search some other place is not pertinent to whether it established probable

cause to search [Defendant] and his vehicle."  (Doc. 93 at p. 1).  Defendant

10

additionally relies on the assertion that "probable cause determinations are place specific." Id.  As such, Defendant is arguing that his blood and vehicle could not be searched because the search warrant did not state a specific place or proximity from the residence in which either were to be searched.  See id. at p. 2 ("[The fact that the vehicle was observed at the Monroe Street address] is not enough to justify issuing an expansive warrant that allowed law enforcement to stop Mr. Wilford *at any place* and search him and his vehicle.") (emphasis added).[1]

However, this argument fails to appreciate that the "specific place" the warrant specified to be searched was the Buick LeSabre and the Defendant's blood itself.  Where Defendant's person and the vehicle were physically located at the time of the search was irrelevant.  To argue that the search warrant needed to specify an additional location where the Buick LeSabre and Defendant's person, *i.e.* his blood or urine, had to be present before being searched is directly contrary to established case law regarding probable cause to search vehicles and DNA.  See United States v. Thunder, No. CR 11-30113-RAL, 2012 WL 5844809, at *8 (D.S.D. Oct. 12, 2012), report and recommendation adopted, No. CR 11-30113-RAL, 2012 WL 5844872 (D.S.D. Nov. 19, 2012) (holding a search confined to Defendant's vehicle was by its nature limited to a "specific area" and the warrant's description of blood

---

[1] As stated in Section I.A., *supra*, this court has already determined probable cause existed for the search warrant, including the Defendant's blood and the vehicle he was driving.  Section I.A focused on the reliability of the SOIs in conjunction with law enforcement's independent verification.  Therefore, the court will consider probable cause in Section I.B. only to the extent of Defendant's separate argument alleging the search warrant needed to state with specificity a location or proximity from the home to which Defendant's person or vehicle could be searched.

evidence to be seized was "detailed enough to guide executing officers in their search.").

> The Fourth Amendment's Warrant Clause categorically prohibits the issuance of a warrant unless it "particularly describe[s] the place to be searched and the person or things to be seized." The purpose of the particularity requirement is to prevent general searches. "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." A search warrant is proper if its description of the evidence to be seized is "'sufficiently definite so as to enable the officer with the warrant to reasonably ascertain and identify the place to be searched and the objects to be seized.'" The requisite degree of specificity is flexible, depending upon the circumstances. Thus, a description is generally valid "if it is as specific as the circumstances and nature of the activity under investigation permit." The standard to be used in making this determination is one of "practical accuracy rather than a hypertechnical one." A court must "base its decision on such factors as the purpose for which the warrant was issued, the nature of the items to which it is directed, and the total circumstances surrounding the case."

Id. (internal citations omitted). See also United States v. Westphal, No. 3:18-CR-30099-RAL, 2019 WL 2145350, at *6 (D.S.D. Mar. 13, 2019), report and recommendation adopted as modified, No. 3:18-CR-30099-RAL, 2019 WL 1789563 (D.S.D. Apr. 24, 2019) (denying Defendant's motion to suppress for evidence from search warrant of Defendant's home, garages, vehicles, and blood/urine).[2]

---

[2] Defendant in Westphal was indicted on drug and firearm charges. Id. Although not factually identical to the present case, the affidavit in support of the search warrant in Westphal also relied, in part, on hearsay from individuals who informed law enforcement that Defendant had firearms in the home and was dating a woman known to be a methamphetamine user. Id.

12

Furthermore, the search warrant specified not only the Buick LeSabre, but also, "any person and/or vehicles present or arriving at the residence between the execution of the search warrant and the termination of the search warrant that have a social nexus to the defendant(s) relating the to the warrant and events." (Ex. 1 at p. 9). By Defendant's own admission, "the LeSabre was seen arriving and then leaving from 210 East Monroe" and law enforcement identified the driver as being the Defendant. (Doc. 80 at p. 4). Therefore, listing the Buick LeSabre and Defendant's person constituted a place specific determination, and the search warrant need not have identified a location or proximity from the residence in which either was to be searched to be valid.

**C.      Search Warrant was not Effectuated as an Arrest Warrant**

Defendant argues that law enforcement treated the search warrant as an arrest warrant, and regardless of whether it was an arrest warrant or search warrant, it was not supported by probable cause. Id. at p. 7. Defendant makes his assertion based on the same analysis used to support his argument that probable cause did not exist for the search warrant. Id. at p. 8.

> As an additional, related claim for relief, [Defendant] asserts . . . that search warrants that allow a person's body to be seized, searched, and subjected to testing, wherever they may be found, regardless of proximately to an alleged crime scene or a place where a warrant is being executed, should be deemed unreasonable.

Id. Defendant, by his own admission, was unable to cite a single authority to support this contention. Id. Also, by his own admission during the hearing, Defendant stated no separate remedy exists for this contention apart from the relief sought by arguing that the search warrant was invalid due to a lack of

13

probable cause.  (Doc. 101 at p. 6-7).  There is no basis to state the search warrant was effectuated as an arrest warrant.  Rather, it was necessary, as it always is to obtain DNA from an unwilling participant, to take Defendant into custody to obtain the blood sample.  Furthermore, Defendant was taken into custody not solely to obtain a blood sample, but also because he had fled from police when they tried to effectuate the stop of the vehicle he was driving.  (Doc. 80 at p. 4-5).  As the court has already made a ruling in Section I.A., *supra,* that probable cause existed to support the search warrant, the court need not address the argument that the search warrant was improperly treated as an arrest warrant also lacking in probable cause.  As it pertains to Defendant's argument that it is summarily unreasonable to allow a person's bodily fluids to be subject to a search warrant where there is no proximity to a specific location, this court has already addressed in Section I.B., *supra,* case law establishing that a search of DNA and vehicles, regardless of location, is not unreasonable.  Defendant's argument on this point is meritless, and is therefore, denied.

## II.    The Good Faith Exception

"The fact that a Fourth Amendment violation occurred—*i.e.*, that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies." Herring v. United States, 555 U.S. 135, 140 (2009). "'[A]ppreciable deterrence' of police misconduct [must] be had before choosing suppression as the right remedy for a Fourth Amendment violation." United States v. Horton, 863 F.3d 1041, 1049–50) (8th Cir. 2017).  Even if an affidavit

14

in support of a search warrant fails to provide probable cause for the issuance

of the search warrant, the fruits of the search will not be suppressed if the

officer who executed the search warrant relied upon that warrant in objective

good faith.  United States v. Ross, 487 F.3d 1120, 1122–23 (8th Cir. 2007)

(describing Leon good-faith exception and citing United States v. Leon, 468

U.S. 897, 921 (1984)).  "Penalizing the officer for the magistrate's error, rather

than his own, cannot logically contribute to the deterrence of Fourth

Amendment violations."  United States v. Hessman, 369 F.3d 1016, 1020 (8th

Cir. 2004) (quoting Leon, 468 U.S. at 921)).  "To trigger the exclusionary rule,

police conduct must be sufficiently deliberate that exclusion can meaningfully

deter it, and sufficiently culpable that such deterrence is worth the price paid

by the justice system."  Herring, 555 U.S. at 144.

The Leon good-faith exception will not apply where the affidavit in

support of the search warrant is "so lacking in indicia of probable cause as to

render official belief in its existence entirely unreasonable."  Ross, 487 F.3d at

1122 (quoting Leon, 468 U.S. at 923).  "'Entirely unreasonable' is not a phrase

often used by the Supreme Court, and we find nothing in Leon or in the Court's

subsequent opinions that would justify our dilution of the Court's particularly

strong choice of words."  United States v. Carpenter, 341 F.3d 666, 670 (8th

Cir. 2003).

Defendant argues the court should consider United States v. Lopez-

Zuniga, in determining the good faith exception does not apply.  (Doc. 93 at p.

5) (citing United States v. Lopez-Zuniga, 909 F.3d 906 (8th Cir. 2018), cert.

denied, 139 S. Ct. 2648, 204 L. Ed. 2d 292 (2019)).  In Lopez-Zuniga, the Court

held Defendant made "only a brief appearance in the affidavit in support of the

first warrant application."  Lopez-Zuniga, 909 F.3d at 909.  The search warrant

relied on the fact that Defendant had 154 "contacts" in a two month period

with the other individual alleged of criminal activity, but did not specify what

constituted a "contact."  Id.  The affidavit further relied on the fact that

Defendant "dropped someone appearing to be [the individual suspected of

criminal activity] at his apartment and then days later picked him up to go to a

restaurant and mall."  Id.  The Court stated the affidavit did not connect

Defendant to the other individual's suspected illicit activity and if the affidavit's

assertions amounted to probable cause, "then *anyone* who drops a drug

trafficker off at the trafficker's residence and travels with the trafficker for

innocent activity, such as the trafficker's grandmother or mere acquaintance,

would be subject to search."  Id.

    The Lopez-Zuniga Court also cited to a previous case in which the good

faith exception did not apply.  Id. at 910 (citing United States v. Herron, 215

F.3d 812 (8th Cir. 2000)).  In Herron, the Court stated the only evidence in

support of the affidavit was the Defendant had a prior marijuana conviction

and a familial relationship to another family, whose farm did show evidence of

marijuana cultivation.  Herron, 215 F.3d at 814.  No evidence was provided

that marijuana would be found at Defendant's residence, that there was any

illegal activity at Defendant's residence, or that Defendant had ever

participated in the cultivation of marijuana at the other farm.  Id.  Defendant

16

argues Lopez-Zuniga is "factually similar" to his own case.  The court finds this argument to be unpersuasive.

While the affidavit contains few direct references to Mr. Wilford, it created a clear link to Mr. Wilford's suspected partaking in criminal activity, contrary to Lopez-Zuniga and Herron.  First, in both Lopez-Zuniga and Herron, the Government had conceded on appeal that the search warrant was not supported by probable cause.  Id.; Lopez-Zuniga, 909 F.3d at 909.  Here, the government has not abandoned its argument that probable cause supported the search warrant.  (Doc. 91 at p. 8-10).  Second, in Lopez-Zuniga, the only information provided linking Defendant to the other individual alleged of criminal activity was: 154 phone contacts in a two month period, which were unclarified in their nature, and the fact that Defendant had been seen dropping someone off who looked similar to the individual suspected of wrongdoing and then picking up the suspected individual days later to go to a restaurant and the mall.  Lopez-Zuniga, 909 F.3d at 909.  Here, Defendant had been linked to the individual suspected of illicit drug activity because it had been disclosed by SOI #2 that he was living in the same home and romantically involved with Denelle Dunn.  (Ex. 1 at p. 6).  Defendant cannot claim he was a "mere acquaintance" to Denelle Dunn.  See Lopez-Zuniga, 909 F.3d at 909.  Contrary to Herron, there has been evidence provided in the affidavit that illicit drug activity was occurring at the home in which Defendant was living and a trash pull conducted by law enforcement verified drug and firearm paraphernalia.  (Ex. 1 at p. 6).

Here, the court finds that probable cause existed for the search warrant, and therefore, the good faith exception need not be analyzed.  However, even if probable cause did not exist, the good faith exception would permit the validity of the search warrant's execution.

## CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant's Motion to Suppress (Doc. 80) be denied.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Objections must be timely and specific in order to require *de novo* review by the District Court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 18th day of October, 2019.

BY THE COURT:

DANETA WOLLMANN
United States Magistrate Judge

18